Dunkin, Ch.
delivered the opinion of the Court
On the 3d October, 1842, William Evans purchased at sheriff’s sales certain réal estate of his brother, Thomas Evans. Immediately, or very soon afterwards, a hill was filed by the execution creditors, to set aside the sale. A decree was pronounced in February, 1844, setting aside the sale, in which it was adjudged, among other things, that the land *354 should be re-sold by the sheriff, and the proceeds be appropriated by him to the discharge of the legal Hens against the defendant in the executions, and that the sheriff should refund William Evans any sums which he had actually paid, on account of his purchase, in October, 1842. Thomas Evans having, in the meantime, taken the benefit of the insolvent debtor’s law, it was ordered that the complainants have leave to make his.assignee a party, and “ to apply for such further order or orders as might, from time to time, be deemed necessary.” This decree was'affirmed by the Court of Errors in May, 1845. At the February sittings, 1846, of the Circuit Court, at Marion, the Commissioner was ordered to ascertain and report the value of the rents of the real estate, from the time of the purchase by William Evans to the time of the resale by the sheriff, under the order of the Court. The Commissioner made his report in February, 1847, setting forth the value of the rents, so far as it could be ascertained; stated that, the defendant., William Evans, had put improvements on the Gasque tract, and the house and lots in the village, the value of which improvements, he recommended, should be allowed to him; and that he had never been in the actual possession of any other of the tracts. It does not appear that any exceptions were filed to this report, but a motion was made to rescind the order of reference of February, 1846, which motion was refused by the Court, and the report of the Commissioner confirmed.
It seems only necessary to determine the general question whether the defendant, Wm. Evans, was accountable for the rents and profits of the real estate, between the time of receiving the sheriff’s title, under the sale of October, 1842, and the resale, in 1845, and whether an order to that effect could be made after the decree of February, 1844. In respect to the latter question, it may be remarked that, for the rents and profits the execution creditors of Thomas Evans had no lien, and in the distribution of them were entitled to no preference. It was, therefore, a proper precaution, that his assignee, under the insolvent law, should be made a party before an order to account, and leave was given by the decree to make him a party, and also to apply for such further order or orders as might be deemed necessary.
It is insisted, however, that William Evans is not liable to account for rents and profits, because, until the decree of the Court, he supposed himself the actual owner, and, although the sale was set aside, no moral fraud was imputed to him. But there is no authority for this position. “A right to land essentially implies a right to the profits accruing from it.”— *355 “ For what,” says Lord .Coke, “ is the land, but the profits thereof.”—Co. Litt. 46; Lyford’s case, 11 Co. 46. The rule of the English of Court of Chancery is, that equity allows an account of rents and profits, in all cases, from the time the title accrued, provided it does not exceed six years, unless under special circumstances, and under these special circumn stances the account is confined to the time of filing the bill. 1 Madd. Ch. 72. In Dormer vs. Fortescue, 3 Atk. 123, Lord .Hardwicke observes, “ Nothing can be clearer, both in law and equity, and from natural justice, than that the plaintiff is entitled to the rents and profits from the time when his title accrued.” He afterwards says, “Where the title of the plaintiff is purely equitable, the court allows the account of rents and profits from the time the title accrued, unless under special circumstances,” when the account, as has been stated, is restricted to six years, or the time of filing the bill.
The doctrine was very fully discussed in the Supreme Court of the United States, in Green vs. Biddle, 8 Wheat. 1. After an examination of the authorities, Mr. Justice Washington declares that the court held it perfectly clear, that the succesful claimant was entitled to an account of rents and profits. He says, “ We are not aware of any common law case which recognizes the distinction between a bona fide possessor and one who holds mala fide, in relation to the subject of rents and profits; and we understand Lyford’s case as fully proving that the true owner of the mesne profits is equally valid against both. How far the distinction is recognized in a Court of Equity has been already shewn,” namely, by restricting the account for rents and profits, under special circumstances, to six years, or the filing of the bill.
In Dellett vs. Whitner, Cheves Eq. 213, these principles are reiterated, and the advantage of a bona fide possessor— “one who supposes himself to be the rightful proprietor”— is stated, to wit, that Chancery will permit him to set off the value oí any lasting, permanent improvements against the account for rents and profits, but never to exceed that account. Supposing the defendant to be a bona fide possessor, who not only supposed himself to be the true proprietor of the land, but who was ignorant that his title was contested, he is bound to account for the rents and profits, subject only to his claim for improvements.
It is hardly necessary to say that the creditors or the assignee of Thomas Evans stand in his place. No title passed by the sheriff’s sale, which was declared void, and the defendant in the execution was still the rightful owner. The *356 defendant, William Evans, has been allowed his discount for improvements to the premises, and has thus been permitted to occupy the most favorable position recognized by this Court. It is ordered and decreed that the appeal be dismissed,
Johnston, Ch. and Caldwell, Ch. concurred.